

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

October 9, 1963

Honorable J. M. Nutt
Commissioner of Insurance
State Board of Insurance
Austin, Texas

Dear Mr. Nutt:

Opinion No. C- 154

Re: Whether the bulk sale of
insurance policies and their
distribution under the stated
facts violate any of the pro-
visions of the Texas Insur-
ance Code.

     Your letter requesting the opinion of this office, to-
gether with its attached exhibits, reflects the following relevant
facts:

     The State Board of Insurance has received proposals from
several insurance companies concerning plans whereby service sta-
tions, motels, or retail stores will purchase accidental death and
accidental bodily injury policies to be distributed to their pat-
rons under programs similar to those involving trading stamps.
There are several variations of the proposed plan, but all of such
plans contemplate the bulk sale by the insurance company to ser-
vice stations, motels or retail stores of its policy forms execu-
ted by an authorized agent of the company. The policy forms will
be forms which have been approved by the State Board of Insurance.
The policies will be executed by an authorized agent prior to de-
livery to the purchaser; however, the portion of the form requiring
the name of the insured, his beneficiary, and the effective date
of the policy will be left blank. The insurance company will re-
ceive, as premium, from the purchaser (service station, motel, or
retail store) a specified sum for each of the policy forms de-
livered in the bulk sale. After purchasing such policy forms in
bulk, the purchaser will pass such policies on to its patrons or
customers under condititons determined by the purchaser. It is
presumed that the insurance company will have knowledge of the
purchaser's program for dispensing the insurance policies.

For instance, one service station operator will display a sign advertising that a free travel accident policy in a certain sum will be furnished to anyone who buys enough gasoline to completely fill his tank. Inasmuch as it cannot be determined who will become the insured or the beneficiary until after the bulk sale of the policies, they will be issued by the insurance company and countersigned by its duly authorized agent without a designated insured or beneficiary, and then delivered by such agent to the purchaser. Likewise, the effective date of the policy will be left blank. The service station operator or his employees would then give one of the policies to a patron or customer at the time of his purchase of gasoline. Either the service station employees or the customer would complete the blanks setting out the name of the insured, his beneficiary, and the effective date. The policy is designed so that a carbon copy of the name of the insured, the beneficiary, and the effective date would be made. The carbon copy would be forwarded to the insurance company.

The official opinion of this office has been requested as to whether or not the insurance company or the service station owner or his employees would violate any provisions of the Texas Insurance Code by making insurance available under the facts above set out.

We find that, under the stated facts, there would be a violation of Articles 3.70-2(A)(2) and 21.01 of Vernon's Texas Insurance Code.

Article 21.02 of Vernon's Texas Insurance Code reads in part as follows:

> "Any person who. . .takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, . . .or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, . . .whether any of

> such acts shall be done at the instance or
> request, or by the employment of such in-
> surance company, or of, or by, any broker
> or other person, shall be held to be the
> agent of the company for which the act is
> done, . . ." (Emphasis added)

The service station operator advertises or gives notice to the public that he will transmit an accident policy to anyone buying a tank of gasoline. The service station operator or his attendants hand over such policies to its customers. The policies are completed either by the customer or the service station operator by inserting the name of the insured, his beneficiary, and the effective date of the policy. To "consummate" is to bring to completion; to raise to the highest point or degree; to complete; to finish. 9 Words and Phrases 17. It must be admitted that the policies in question are not completed or finished when delivered to the purchaser or service station operator; there is no insured, no named beneficiary to receive payment of any loss, and no effective policy. The consummation of such policies occurs at a subsequent time when a customer purchases gasoline. Even though the customer may complete the policy form by supplying the name of the insured, the beneficiary and the effective date of the policy, the facts remain that the service station operator gives notice to the public that he will transmit the policies to purchasers of gasoline and actually transmits the policies at the time of the purchase.

Article 21.02, provides that if any person shall perform any of the specified acts in this state, other than for himself, such person shall as a matter of law be an agent of the company for which the act is performed. The statute expressly provides that it makes no difference whether the acts are done at the instance or request of the insurance company or some other person. The only exception is when a person performs the act for himself. Although it can be said that the purchaser or service station operator benefits or gains from the distribution of such policies, the benefit accrued is due to the promotional effect upon the sale of gasoline. In performing the statutory acts the service station operator cannot be said to benefit directly or indirectly under the terms of the policy.

Therefore, the service station operator, who performs such acts contemplated by Art. 21.02, cannot be performing them for himself; instead, the acts are within the terms of said Article and an agency relationship is created as a matter of law between the service station operator and the insurance company. Consequently, there would be a violation of Art. 21.01 of Vernon's Texas Insurance Code, which requires a person acting as an agent to procure a license from the State Board of Insurance.

Article 3.70-2(A)(2) provides in part as follows:

"(A) No policy of accident and sickness in-surance shall be delivered or issued for delivery to any person in this state unless:. . .(2) the time at which the insurance takes effect and ter-minates is expressed therein; . . ." (Emphasis supplied).

This clearly mandatory provision, enacted by the state legislature to govern and control accident insurance policies as are here involved, contemplates that the time at which the policy takes effect and terminates must be expressed therein before the issuance or delivery of such policy by the insurer or his agent to the purchaser. The word, "time", as used within the context of the above Article, has been defined as "a definite moment, hour, day, or year, as indicated or fixed by a clock or calendar." Webster's New International Dictionary, 2nd Ed., p. 2648. 41 Words and Phrases 639. This prerequisite for the issuance or de-livery of a policy would not be complied with under the stated facts, since the effective date is to be supplied subsequent to the delivery of the policy by the insurance agent to the service station operator. Although the policy forms have been approved by the State Board of Insurance, it was anticipated that the re-quirement of Art. 3.70-2(A)(2) would be fulfilled by expressing the effective date before the policy is issued or delivered. Therefore, failure to so prescribe the exact date at which the policy takes effect before its issuance or delivery by the insurer to the purchaser would violate Art. 3.70-2(A)(2).

## SUMMARY

Under the stated facts, the bulk sale of policies by the insurance company and their subsequent distribution by the unlicensed purchaser violate Articles 3.70-2 (A)(2) and 21.01, Vernon's Texas Insurance Code, respectively.

Yours truly,

WAGGONER CARR
Attorney General of Texas

By _James N. Stofer_

James N. Stofer
Assistant

JNS:lmc

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Dudley McCalla
Arthur Sandlin
Frank R. Booth
Jerry Brock

APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone